UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                    Case No. 08-CR-340

OMARR LOWE,

    Defendant.

**RECOMMENDATION ON DEFENDANT'S MOTION TO
SUPPRESS PHYSICAL EVIDENCE**

**I. BACKGROUND**

On December 16, 2008, a grand jury sitting in the Eastern District of Wisconsin returned a two-count indictment naming Omarr Lowe ("Lowe"or "Omarr") as the defendant. Count One charges Lowe with knowingly and intentionally possessing with intent to distribute a mixture and substance containing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Count Two charges Lowe with knowingly possessing five firearms in furtherance of the commission of the drug offense charged in Count One of the indictment, in violation of 18 U.S.C. § 924(c)(1)(A). The indictment also contains a forfeiture provision.

Lowe was thereafter arraigned on the indictment and entered a plea of not guilty to the charges. A final pretrial conference is currently scheduled to be conducted on March 5, 2009, before the Honorable William C. Griesbach, United States District Judge. A jury trial is currently scheduled to be conducted before Judge Griesbach on March 16, 2009.

In accordance with the scheduling order issued at the arraignment (after a short extension for doing so was granted), the defendant filed a motion to suppress physical evidence, which motion was accompanied by a memorandum of law and several exhibits, including a copy of the search warrant

which is the target of his motion to suppress. The government has filed its response and the defendant has filed his reply memorandum. Thus, the defendant's motion to suppress physical evidence is now fully briefed and is ready for resolution. For the reasons which follow, it will be recommended that the defendant's motion to suppress be denied.

## II. DISCUSSION

### A. The Parties' Positions

As previously stated, the target of the defendant's motion to suppress is a search warrant. The warrant was issued by Outagamie County Circuit Court Judge John A. DesJardins on November 3, 2008. The warrant called for the search of a residence located at 2515 W. Fourth Street, Appleton, Wisconsin and the seizure of:

> marijuana and/or cocaine; scales or other weighing devices or measuring devices; containers of various types commonly associated with the storage and use of controlled substances; plastic baggies, and other items used to package marijuana or cocaine for sale; drug related paraphernalia; records tending to establish and document delivery of controlled substances, consisting in part, and including but not limited to users lists, buyers lists, sellers lists, records of sales; articles of personal property tending to establish the existence of a conspiracy to deliver controlled substances including but not limited to personal telephone books, address books, telephone bills, papers and documents containing lists of names, cell phones, computers, digital camera; monies including the pre-recorded monies used in the sale; documents including but not limited to utility bills, bank statements, addressed mail, keys, and other items used [to] establish the identity of persons in possession and control of the premises where controlled substances are found or where the sale occurred; and to search any persons on the premises for the above described items.

(Def.'s Br. Ex. 1 at 1.)

The warrant was thereafter executed. According to the search warrant return, a copy of which accompanied the defendant's motion to suppress, a number of items were seized under the warrant, to wit: cocaine, firearms, U.S. currency, marijuana, drug paraphernalia, a cell phone, a computer and a vehicle.

2

Lowe attacks the warrant on several fronts. First, he asserts that the jurat indicates that it was signed by Judge Desjardins on August 3, 2008, nearly three months before the search occurred. In Lowe's view, "[t]he defect in what amounts to notarizing language matters, as it would to any other document, including those of far less import than that required to search one's home." (Def.'s Br. at 3.)

Second, Lowe asserts that "the affidavit recites inadequate reliable facts from which one might find probable cause to believe that there were drugs in Omarr Lowe's home." (Def.'s Br. at 3.) Specifically, Lowe argues as follows:

> The Affidavit contains various assertions that are general in nature concerning the behavior of drug dealers. There are only two references of any kind that are specific to Mr. Omarr Lowe or his residence. The first concerns the fact that Doby Lowe visited his brother's house for thirty minutes on the same day that he sold drugs to a CI. The Affidavit recites that investigators who were watching Doby Lowe, the Defendants' brother, observed him to leave the location where he had obtained money from a CI for the purpose of buying drugs. He had told the potential buyer that he should come back in 1 ½ hours. The Affidavit does not suggest that Doby Lowe said he had to get the drugs from a supplier or from elsewhere, nor indeed, that he did not have the drugs on him. The Affidavit recites that the investigators saw Doby Lowe go to his brother's home at 2515 W. Fourth Street after the CI left, and remain there for thirty minutes before returning. The Affidavit further recites that after Doby Lowe left Omarr Lowe's residence, he called the CI and said that they "were all good." The Affidavit contains no information about Doby Lowe carrying a package or obtaining anything from the house.

(Def.'s Br. at 3-4.)

Finally, Lowe asserts that the affidavit contains insufficient information to establish the informant's reliability. He argues:

> The only other connection between Omarr Lowe and his residence at 2515 W. Fourth Street is a sentence in the Affidavit as follows: "Inv. Feucht advised your affiant that during interviews with CI-976 that Omarr Lowe is the cocaine source for Doby S. Lowe. [sic] CI-976 statements have proven reliable in the past." Affidavit, Page 4. There is no other information provided as to why CI-976 should be

3

considered reliable. In the absence of any basis for believing him to be reliable, his statement is not entitled to value. The statement attributed to him lacks any of the corroboration or specificity that might provide the statement of an informant with greater reliability, such as that enumerated in *United States v. Koerth*, 312 F.3d 862 (7th Cir. 2002).

A conclusory assertion that an informant has provided reliable information is not sufficient to cloak the speaker with any aura of reliability for the purposes of judging the value of his statement in the Affidavit. The material quoted should be treated as nothing more than an unsupported conclusion from an informant of unknown reliability. Such a statement should not be relied upon. . . . Rather, the affidavit should be assessed as if the unsupported conclusion were not present.

(Def.'s Br. at 4.)

Of course, the government disagrees with the defendant's assessment of the affidavit. First of all, the government argues that the obviously mistaken date listed in the jurat is of no material significance. "The error in the recording of the date the oath was administered does not render the warrant insufficient or invalid when the search warrant is viewed in its entirety . . . ." The government contends that "[d]espite the scrivener's error in the notary block, it is clear from the entire document and the execution of the search warrant that the warrant was obtained on November 3, 2008." (Gov't's Br. at 4.)

Secondly, the government argues that the affidavit does provide probable cause to support the issuance of the warrant. Specifically, the government states that "it is reasonable to infer that Doby Lowe obtained the cocaine from Omarr Lowe." The government further states that

> [t]he affidavit establishes that Doby Lowe was kept under constant surveillance and traveled only to the residence of Omarr Lowe. Upon leaving Omarr Lowe's residence, Doby Lowe called the CI and said "its all good." Doby Lowe then told the CI to meet him at Doby Lowe's residence.

4

(Gov't's Br. at 5.) In conclusion, the government asserts that it was reasonable for Judge DesJardins to conclude that, when Doby Lowe contacted the CI upon leaving Omarr Lowe's residence and set up a meet time to supply cocaine to the CI, there would likely be contraband or evidence of a crime at 2515 W. Fourth Street. (Gov't's Br. at 6.)

Thirdly, with respect to the reliability of the informant, the government argues that the very details of the investigation as set forth in the affidavit serve to corroborate the information provided by the informant, thereby supporting his/her reliability. The government points out that "[t]he affidavit in the case at hand included information confirming the reliability of the CI through surveillance and observations of investigators." (Gov't's Br. at 7.)

Finally, the government argues that, even assuming the inadequacy of the affidavit, the admissibility of the evidence seized under the warrant is saved by the good faith exception to the exclusionary rule as pronounced in *United States v. Leon*, 468 U.S. 897, 905 (1984). (Gov't's Br. at 7-8.)

**B. Analysis**

The affidavit that was submitted in support of the search warrant is far from a model of clarity, chronological and otherwise. Nevertheless, as best as the court can discern, the affidavit sets forth the following information.

On November 3, 2008, and sometime prior to 5:35 p.m. (perhaps 1 ½ hours earlier[1]), affiant Investigator Gary Lewis ("Lewis") personally observed the CI meet with Doby S. Lowe at the address of 2128 N. Sherri Lin Ct. #A, Town of Grand Chute, Wisconsin ("Sherri Lin"). According

---

[1] The court infers that it was 1 ½ hours earlier because in his affidavit Lewis avers that the CI was advised by Doby Lowe to "return approximately 1 ½ hours later." (Def.'s Br. Ex. 2 at 3.)

5

to Lewis, the CI gave Doby Lowe $750.00 of pre-recorded currency, which included $300.00 to cover a past drug transaction.[2] (Def.'s Br. Ex. 2 at 3.)  Lewis and Investigator Jason Treichel ("Treichel") maintained surveillance of the Sherri Lin address "after CI [ ] left the residence." Lewis then observed a white Mitsubishi Montero XLS bearing Wisconsin license 149NNA leave the parking lot associated with the Sherri Lin address.  At that time, Lewis observed that the vehicle was being driven by a person whom Lewis believed to be Doby Lowe.

Lewis and Treichel followed the vehicle to 2515 W. Fourth Street in Appleton and observed Doby Lowe enter the front door of that address.  After maintaining surveillance of that address for 30 minutes, Lewis and Treichel observed Doby Lowe exit the driveway of the Fourth Street address. Although it is not clear how Investigator Feucht learned such information, Investigator Feucht advised Lewis that the CI received a call from Doby Lowe that coincided with Doby Lowe's leaving the residence on Fourth Street.  Furthermore, although once again it is not clear how Lewis learned such information, Lewis claims that the CI was told by Doby Lowe that "its all good" and that the CI should come over to the residence at Sherri Lin at approximately 5:30 p.m. on November 3, 2008. Thereafter, according to Lewis, at approximately 5:35 p.m. on November 3, 2008, the CI obtained the 14.3 grams of cocaine from Doby Lowe.

Furthermore, Feucht advised Lewis that, during interviews with the CI, the CI told Feucht that Omarr Lowe was the cocaine source for Doby Lowe.  Finally, Feucht advised that the CI's statements proved reliable in the past. (Def.'s Br. Ex. 2 at. 4.)

---

[2] The affidavit does not state precisely how Lewis knows that the CI gave the pre-recorded currency to Doby Lowe, although Lewis does aver that he "make[s] th[e] affidavit upon [his] personal observations as well as the observations of the officers identified herein." (Def.'s Br. Ex. 2 at 3.)

6

A court's duty in reviewing a search warrant is limited. The duty of a reviewing court is simply to ensure that the judicial officer had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). Probable cause is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id.* at 238. Probable cause exists when it is reasonably believed that the evidence sought will aid in the prosecution of a particular offense and the evidence is located in the place to be searched. *See United States v. McNeese*, 901 F.2d 585, 592 (7th Cir. 1990), *overruled on other grounds by United States v. Nance*, 236 F.3d 820 (7th Cir. 2000). "Probable cause denotes more than a mere suspicion, but does not require certainty." *United States v. Fleischli*, 305 F.3d 643, 651 (7th Cir. 2002) (internal quotations omitted). "'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Kimberlin,* 805 F.2d 210, 228 (7th Cir. 1986) (quoting *Brinegar v. United States,* 338 U.S. 160, 175 (1949)).

Probable cause is a fluid concept turning on the assessment of probabilities in a particular factual context. "Rather than viewing bits and pieces of a probable cause showing in isolation, the court must focus on all the facts presented to the magistrate." *United States v. Markling*, 7 F.3d 1309, 1317 (7th Cir. 1993). A search warrant may issue "even in the absence of [d]irect evidence linking criminal objects to a particular site." *United States v. Sleet*, 54 F.3d 303, 306 (7th Cir. 1995) (internal quotations omitted). "The [judicial officer] to whom the warrant application is directed is entitled to draw reasonable inferences about where evidence is likely to be kept based on the nature of the evidence and the type of offense, and the [judicial officer] need only conclude that it would

7

be reasonable to seek the evidence in the place indicated in the affidavit." *Id.* (internal quotations omitted).

A judicial preference is to be accorded warrants in those cases where there is a close or marginal showing of probable cause. In reviewing prior probable cause findings made by a judicial officer in issuing a warrant, "great deference is to be accorded to that determination." *Leon*, 468 U.S. at 914; *United States v. Pless*, 982 F.2d 1118, 1124 (7th Cir. 2002) (stating that "doubtful cases are to be resolved in favor of upholding the warrant"). The Seventh Circuit Court of Appeals has held that the standard of review of a determination that probable cause exists supporting issuance of a search warrant is "one of affirmance absent clear error by the issuing magistrate." *Pless*, 982 F.2d at 1124. Indeed, "[a] magistrate's determination of probable cause 'is to be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.'" *United States v. Newsom*, 402 F.3d 780, 782 (7th Cir. 2005) (quoting *United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999)).

Most recently, the Seventh Circuit had the following to say about a reviewing court's task in assessing another court's issuance of a search warrant:

> When a search is authorized by a warrant, we give "great deference" to the issuing judge's conclusion that probable cause has been established. We defer to the issuing judge's initial probable cause finding if there is "substantial evidence in the record" that supports his decision. A search warrant affidavit establishes probable cause when "it sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." "[T]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." The

8

judge, however, may not solely rely upon "conclusory allegations" or a "bare bones" affidavit when issuing a warrant.

> Where the affidavit is supported by an informant's tip, we examine the totality of the circumstances to determine probable cause. This inquiry encompasses several factors, including: (1) the extent to which the police have corroborated the informant's statements; (2) the degree to which the informant has acquired knowledge of the events through firsthand observation; (3) the amount of detail provided; and (4) the interval between the date of the events and the police officer's application for the search warrant. Significantly, we also consider whether the informant personally appeared and presented an affidavit or testified before the magistrate, thus allowing the judge to evaluate the informant's knowledge, demeanor, and sincerity.

*United States v. Sims*, 551 F.3d 640, 643-44 (7th Cir. 2008) (citations omitted).

Bearing these standards in mind, I am persuaded that the defendant's motion to suppress should be denied.

First of all, it is quite apparent that the jurat set forth the wrong date for the date of execution of the affidavit in support of the warrant. All of the material information supporting the issuance of the warrant occurred on November 3, 2008, so it would have been impossible for the affidavit to have actually been notarized three months earlier (unless of course all of the information in the affidavit concerning the events of November 3, 2008 is "made up"; and the defendant makes no such allegation.) Furthermore, the defendant does not assert that Lewis was not placed under oath by Judge DesJardins, just that the date noted for such oath-giving was incorrectly recorded. The Seventh Circuit (although admittedly in the context of a summary judgment motion in a civil case) has stated that "a district court should not be unnecessarily hyper-technical and overly harsh on a party who unintentionally fails to make certain that all technical, non-substantive requirements of execution are satisfied." *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985) (finding that a sworn affidavit is admissible if actually sworn to before an officer authorized to administer an oath, even

9

in the absence of the formal requirements of a jurat). Given the foregoing, to the extent that the defendant maintains that the warrant is invalid due to the wrong date being included in the jurat and that therefore all evidence seized under the warrant should be suppressed, his motion should be denied. This then brings us to the more substantive grounds for suppression that are advanced by the defendant.

To be sure, and as noted previously, the affidavit presented in support of this search warrant is not easy to follow. That an affidavit is poorly crafted, however, does not mean it fails to set forth probable cause. Distilled to its essence, Lewis' affidavit presents the following factual scenario: The CI and Doby Lowe met and discussed a drug transaction. Doby agreed to sell the CI a small amount of cocaine for $750.00. Doby told the CI to come back in 1 ½ hours. Doby was then seen driving an automobile from Grand Chute to Appleton where he entered the residence at 2515 W. Fourth Street, a residence which is known to belong to Doby's brother, Omarr Lowe. After spending approximately ½ hour in the residence, Doby departed and returned to his own residence in Grand Chute. As he departed, he called the CI telling him/her that "its all good" and instructing the CI to meet him at the residence in Grand Chute. The CI did indeed meet Doby at Doby's residence and obtained from Doby 14.3 grams of cocaine. As a final point, the CI told law enforcement that Omarr Lowe was the cocaine source for Doby Lowe.

The defendant correctly notes that "[t]he Affidavit contains no information about Doby Lowe carrying a package or obtaining anything from the house." However, that there is no assertion that Doby was seen carrying anything from Omarr's house is not determinative. First of all, the amount of cocaine that was delivered to the CI was only 14. 3 grams. That is an amount that is easily carried in one's pocket. Moreover, one would hardly expect a person to carry a quantity of cocaine in the

10

open and in such a manner that it could be readily seen by others. After all, it *is* illegal to possess cocaine.

Furthermore, it is not necessary for law enforcement to have actually seen Doby carry anything in order for the judicial officer to have found probable cause to believe that there was evidence of drug dealing in Omarr's residence. To the contrary, it is the very factual scenario as described above that would lead one to believe that there was evidence of drug dealing in Omarr's house. After all, it was Doby who told the CI to come back in 1 ½ hours to get the cocaine. If Doby already had the cocaine in his possession it would make no sense to not just "do the deal" immediately. And it was not until Doby departed Omarr's house that he called the CI to tell him "its all good" and to meet Doby at Doby's residence. It was thus reasonable to infer that Doby went to Omarr's house for the purpose of obtaining the cocaine.

In support of his argument that the affidavit was insufficient, Omarr relies principally on *United States v. Koerth*, 312 F.3d 862 (7th Cir. 2002) and *Owens v. United States*, 387 F.3d 607 (7th Cir. 2004) in arguing that the conclusory statement in the affidavit concerning the informant's reliability is, for all intents and purposes, a nullity and therefore cannot be relied upon at all. To be sure, in *Koerth* the court stated:

> The Sturz affidavit presented the magistrate judge with little more than mere conclusions and assertions of wrongdoing on the part of the defendant, without an adequate factual foundation, based on the testimony of a previously unknown informant. We therefore accept the Government's concession, for we are convinced that the affidavit failed to sufficiently support the search warrant executed by Sturz.
>
> Another attack made on the contents of the affidavit focuses on the credibility of the informant. Initially, the affidavit fails to explain the extent, if any, that Savage has previously provided information leading to arrests or prosecutions for criminal activity of any kind. Even assuming the affidavit's conclusory statement that Savage "is believed to be a reliable source," our cases hold that such characterizations,

11

standing alone without any supporting factual information, merit absolutely no weight and that "information obtained from 'a reliable source'" must be treated "as information obtained from an informant of 'unknown reliability.'" *United States v. Brack*, 188 F.3d 748, 755 (7th Cir. 1999).

Koerth, 312 F.3d at 867.

Similarly, in *Owens* (in the context of ruling on a motion to set aside a drug conviction for ineffectiveness of counsel), the court found the particular search warrant affidavit under consideration to be inadequate. The court stated as follows:

> The warrant pursuant to which evidence (consisting mainly of cocaine, marijuana, and guns) was used against Owens at his trial was based on a barebones affidavit, signed by a detective, which stated that three months earlier an informant had bought "a quantity of crack" from Owens at a house believed to be Owens's residence. There was no indication either of the actual quantity of crack or of the reliability of the informant. Owens's trial lawyer moved to suppress the evidence, arguing that a sale of an unknown quantity of an illegal drug three months before a search warrant was sought does not, without more (as in *United States v. Pless*, 982 F.2d 1118, 1125-26 (7th Cir. 1992), establish probable cause to believe that the search of the premises on which the sale took place would turn up contraband or evidence of crime. The argument should have been a winner.

*Owens*, 387 F.3d at 608.

Indeed, Lewis's conclusory statement about the CI's statements having been reliable in the past would be as meaningless as the conclusory statements that were offered about the reliability of the informants in *Koerth* and *Owens*, except for the fact that the affidavit in the instant case is not "barebones," as were the affidavits in *Koerth* and *Owens*. More particularly, in both *Koerth* and *Owens*, the informants' information related exclusively to past activities that the informants claimed to have seen. The law enforcement personnel in those two cases had not independently observed *anything* of a suspicious nature which would have supported or corroborated in any way the informants' information. Stated another way, the law enforcement personnel in *Koerth* and *Owens*

12

were relying exclusively on the informants' information about the past criminal activities of the targets of the warrants. That is not so in the instant case.

To reiterate, the law enforcement personnel in the case at bar observed firsthand some of the activities of the CI and Doby on November 3, 2008. They were aware of the effort of the CI to purchase cocaine for $750.00. They were aware that Doby told the CI to return to Doby's residence in 1 ½ hours. They observed Doby thereafter drive to Omarr's house. They knew that Doby spent about ½ hour in Omarr's house before he called the CI to tell him "its all good" and instructed the CI to meet at Doby's house. They were aware that the CI thereafter received 14.3 grams of cocaine from Doby.

Indeed, even in *Koerth*, the court acknowledged that "[s]tatements from an informant of unknown reliability may in certain instances serve to establish probable cause if, under the totality of the circumstances, a reasonable person might consider that the statements are worthy of credence." *Koerth*, 312 F.3d at 867-68. This is just such a case.

When lawyers leave the practice of law and move to the bench they do not leave their common sense behind (although some lawyers might like to argue otherwise). And a common sense view of the information presented in the affidavit would lead to the conclusion that Doby likely obtained the cocaine from the residence at 2515 W. Fourth Street in Appleton, i.e., the residence of his brother, Omarr. In that latter regard, the CI's statement to law enforcement that Omarr was Doby's source was only frosting on the cake. This is because, even without that statement, there would have been sufficient information (although it would have been a closer call) for Judge DesJardins to find that there was a fair probability that contraband or evidence of a crime, i.e., drug dealing, would be found at 2515 W. Fourth Street in Appleton. *See Gates*, 462 U.S. at 238.

13

In view of the fact that this court finds the affidavit to present sufficient information to support probable cause, there is no need to address the application of the good faith exception of *Leon* to the search in this case.

In conclusion, and for all of the foregoing reasons, it will be recommended that the defendant's motion to suppress physical evidence be denied.

**NOW THEREFORE IT IS RECOMMENDED** that the defendant's motion to suppress physical evidence be **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B), and (C), Federal Rule of Criminal Procedure 59(b), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

**SO ORDERED** this 9th day of February, 2009, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge